UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

JAMES CARNELL EPPES,

         Petitioner,         Case No. 1:17-cv-599

v.                                Honorable Paul L. Maloney

THOMAS MACKIE,

         Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.  Factual allegations

Petitioner James Carnell Eppes is presently incarcerated with the Michigan Department of Corrections at the Oaks Correctional Facility. Petitioner is serving concurrent sentences of 17 to 45 years and 5 to 10 years, consecutive to a sentence of 2 years, following his August 25, 2014, plea of *nolo contendere* in the Kent County Circuit Court to charges of armed robbery, MICH. COMP. LAWS § 750.529, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and felony firearm, MICH. COMP. LAWS § 750.227b. On September 29, 2014, the court sentenced Petitioner.

Petitioner's charges arose from his alleged participation in a three-man crime spree on January 5, 2014. (Br. in Supp. of Appl. for Leave to Appeal, ECF No. 2-1, PageID.79.) According to the trial court's factual findings, on that date there was a massive snowstorm. (Plea Hr'g Tr., ECF No. 2-1, PageID.57.) Petitioner and his co-defendants, Smith and Brown, were driving around Kent County in a four-wheel drive pick-up. (*Id.*) They robbed three individuals at gunpoint: Aaron Hoadley, Oscar Gonzalez, and Latarsha Horsley. (Pet'r's Br., ECF No. 2, PageID.24-25.) Petitioner's co-defendants reported that Mr. Brown "actually robbed" Mr. Hoadley while Petitioner was driving; Mr. Smith robbed Mr. Gonzalez while Petitioner was driving; and Petitioner robbed Ms. Horsley while Mr. Smith was driving.[1] (Plea Hr'g Tr., ECF No. 2-1, PageID.60.) Based on that conduct, Petitioner was charged with three counts of armed

---

[1]There are handwritten notes, presumably Petitioner's, on the plea transcript that Petitioner filed along with his brief. *See* (Plea Hr'g Tr., ECF No. 2-1, PageID.60.) The notes indicate that Petitioner did not wield the gun when Ms. Horsley was robbed; instead, he drove the car. (*Id.*) This is an interesting admission in that Petitioner elsewhere claims that he had lent his truck to Smith and Brown. (Pet'r's Br., ECF No. 2, PageID.30) Petitioner claims that he just happened to be with them, he was simply dropping them off after they returned the truck, when the police stopped the vehicle. (*Id.*)

robbery (one for each victim), one count of felon in possession of a firearm, and one count of felony firearm.

Petitioner was on his fourth counsel[2] on August 14, 2014, the date scheduled for Petitioner's jury trial. (Plea Hr'g Tr., ECF No. 2-1, PageID.44.) Nonetheless, Petitioner asked the trial court to permit that attorney to withdraw and postpone the trial. The trial court denied the motion. The trial court then explored the status of plea negotiations. The prosecutor offered to dismiss armed robbery counts 2 (relating to Mr. Gonzalez) and 3 (relating to Ms. Horsley), to reduce Petitioner's habitual offender status from fourth offense to third offense, and to stipulate to a guidelines range of 135 to 337 months, if Petitioner would enter a plea on count 1 (relating to Mr. Hoadley), count 4, felony firearm, and count 5, felon in possession of a firearm. (Plea Hr'g Tr., ECF No. 2-1, PageID.15.) Petitioner and his counsel asked for a break to discuss the offer. After a twenty minute break, Petitioner returned to enter his plea.

The trial court recited the terms of the plea agreement on the record, the parties acknowledged the terms, and the oath was administered to Petitioner. The trial court established Petitioner's ability to read the documents relating to his plea and to understand the proceedings. The court made sure Petitioner understood the nature of the crimes charged and the maximum penalties attendant to each crime. Petitioner acknowledged that he understood the terms of the agreement and that no other promises or inducements had been made. The court then inquired regarding Petitioner's understanding of the rights he would be waiving:

> THE COURT: Did you have a chance to review this document called the Advice of Rights Form?
>
> THE DEFENDANT: Yes.

---

[2] Petitioner convinced the trial court to replace Petitioner's first appointed counsel, Mr. Pyrski. Petitioner's second appointed counsel, Mr. Milanowski, was forced to withdraw because of a conflict. Petitioner replaced his third appointed counsel, Mr. Adams, with retained counsel, Mr. Danian, during July of 2014. *See* (Plea Hr'g Tr., ECF No. 2-1, PageID.39-48.)

| | |
|---|---|
| THE COURT: | Did you read through it before you signed it? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Did you understand if you entered a plea of either guilty or a plea of no contest you would waive or give up all of these rights? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Do you also understand, and is that your signature on the document? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Did you also fill out, and I'm sorry, did you also review the plea agreement form that I'm holding in my right hand? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And did it contain all the essential terms that exist between you and the People regarding the resolution of this case? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And is that your signature in the lower right-hand side? |
| THE DEFENDANT: | Yes. |

\* \* \*

| | |
|---|---|
| THE COURT: | All right. In addition, do you understand, Mr. Eppes, if I accept your plea of guilty, you'll be giving up any claim that the plea is the result of any promise, inducement, or plea agreement, unless I am told what it is here on the record. Do you understand that? |
| THE DEFENDANT: | Yes. |

(Plea Hr'g Tr., ECF No. 2-1, PageID.55-56.) The Michigan Advice of Rights Form states as follows:

> You have offered to plead guilty or nolo contendere in this matter. Before accepting your plea, the court must be convinced that you understand the following.

>1. If your plea is accepted, you will not have a trial of any kind and you will be giving up the rights you would have at a trial, including the right:
>
>>(a) to be tried by a jury;
>>
>>(b) to be presumed innocent until proved guilty;
>>
>>(c) to have the prosecutor prove beyond a reasonable doubt that you are guilty;
>>
>>(d) to have the witnesses against you appear at the trial;
>>
>>(e) to question the witnesses against you;
>>
>>(f) to have the court order any witnesses you have for the defense to appear at the trial;
>>
>>(g) to remain silent during the trial;
>>
>>(h) to not have that silence used against you; and
>>
>>(i) to testify at the trial if you want to testify.
>
>2. If your plea is accepted, any appeal from your conviction and sentence pursuant to this plea will be by application for leave to appeal and not by right.

Michigan SCAO Advice of Rights (Circuit Court Plea) CC291 (3/15). The trial court accepted Petitioner's plea, deriving a factual basis for the plea from the prior proceedings relating to Petitioner's co-defendants. On September 29, 2014, the court sentenced Petitioner.

Subsequently, Petitioner filed a motion in the trial court to withdraw his plea raising two issues: (1) Petitioner's plea was not knowing and voluntary; and (2) counsel rendered ineffective assistance when he failed to inform Petitioner that the plea would waive Petitioner's right to challenge evidentiary issues on appeal. The court denied that motion on November 6, 2015. Petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals raising the same two issues he raised in the trial court in his motion to withdraw plea. The

court of appeals denied leave by order entered January 13, 2016. Petitioner then sought leave to appeal in the Michigan Supreme Court. That court denied leave by order entered June 28, 2016.

On or about June 30, 2017, Petitioner filed his petition seeking habeas corpus relief in this Court, raising the same issues he raised in the Michigan appellate courts.

II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at

655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Petitioner has failed to show his plea is invalid

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claim does not challenge the power of the state to bring him into court. Instead he contends that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

In order to find constitutionally valid guilty plea, several requirements must be met. The defendant pleading guilty must be competent, *see Brady v. United States*, 397 U.S. 742, 756 (1970), and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced

by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Garcia*, 991 F.3d at 326. A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Petitioner raises two separate but related challenges to the validity of his plea. First, he contends his plea was unknowing because he was not aware that his plea would foreclose an appeal on "evidentiary issues." Second, he argues he did not have the advice of competent counsel

9

because counsel failed to inform Petitioner that the plea would foreclose an appeal on evidentiary issues and because counsel affirmatively represented that Petitioner would be able to "raise his issues" on appeal. Each challenge is addressed below.

### A. Petitioner's plea was entered knowingly

Petitioner's state court appellate briefs do not shed any light on which "evidentiary issues" he hoped to raise in the appellate courts. *See* (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 2-1, PageID.72-87; Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 2-1, PageID.68-83.) He has been more forthcoming in his federal court filings. For example, Petitioner notes:

> Officer Vakertzis alleged that victim Ms. Horsley identified Petitioner Eppes as being the person that robbed her. This officer was obviously lying because, when given the opportunity to speak for herself in identifying the person who robbed her, Ms. Horsley did not hesitate in her absolute certainty that Mr. Eppes was not the person who robbed her.
>
> \* \* \*
>
> For one, victim Oscar Gonzalez who claimed approximately $100 dollars was taken, said that, he was positive that none of them was the suspect who had the gun and that none of them was the front passenger in the truck (the one with the dredlocks ). He stated he never got a good look at the driver of the truck so he was unable to say if any of the three had been driving the truck . . . .
>
> \* \* \*
>
> At the preliminary examination, Ms. Horsley identified Mr. Smith as the guy who pulled the gun on her and robbed her of $5 dollars. Victim Horsley was adamant about her surety that Keith Smith was the man who robbed her. The following excerpts highlight the testimony: "And he was like, Bitch! Give me your money." And I was so scared, so I threw my five dollars in your face. And then you told me to turn around. It's not funny. You told me to turn around. I took a look at you, and I already seen you, and I kept walking. And then you was like, "Don't turn around, Bitch! Don't you turn around . . . " (Preliminary Tr. 29-30); "Q. So the defendant is-you saw a-a gun. How many guns did you see? A. That one gun in his hand. I swear to the livin' God, on my mom, got right down-( sic )-yes, you did. Yes, you did. And you said, "Bitch, turn around. Don't look at me. Don't look at me." And I already seen you (sic) you, and you know I'm not lying. Q. So, it was this-- you

saw one gun, and it was being held by this defendant? A. Yeah. And the other guys was just sittin' there. (Preliminary Tr. 30-31 ). (see Appendix E for preliminary excerpts.)

Also important is that during cross-exam Ms. Horsley said she told officers who had the gun and it was not the defendant (see Preliminary Tr. 38-39).

\* \* \*

The fact that both co-defendants pointed blame at the defendant during their plea hearing is nothing new and clearly not reliable. The evidence shows that from the very beginning both Smith and Brown lied about their involvement and literally tried to frame the defendant.

\* \* \*

This is critical because the two co-defendants claimed it was defendants' gun. Defendant claimed it was not his and that he never saw anyone with a gun. Defendant contends that had this firearm been reported stolen, more likely than not the MSP report would have specified so. Though not verified, but also not disproved, this gun could possibly be linked to one of the codefendants if the owner was shown to be an associate, relative or friend.

\* \* \*

Victim Horsley was approached very near to midnight, it was dark, it was a highstress situation and the confrontation time frame was limited. According to Ms. Horsleys' preliminary testimony, she seemed to be adamantly focused on the passenger who robbed her. Though she claimed the defendant was the driver, the prosecution suggestively presented a singular photo as an exhibit for the victim to identify, clearly insinuating that the guy in the photo was arrested along with the other suspects. Also, no officer expressed that defendant was wearing clothing consistent with those identified by the victim. Defendant contends that he was misidentified simply because he was with two individuals who had been positively identified. Case in point: Officer Vakertzis report has victim Horsley positively identifying the defendant as the armed robber. (see Appendix D), yet, shows up at the preliminary examination two weeks later and emphatically, with conviction, claims Smith was the one who robbed her.

*See* (Pet'r's Br., ECF No. 2, PageID.23-31.) Thus, Petitioner's habeas petition and supporting brief indicate that he hoped to raise issues regarding the sufficiency of the prosecution's evidence.

There may be some consequences of entering a plea that are not obvious; but, the consequence that the plea waives the prosecutor's burden to present sufficient evidence of the

charged crime is not one of them.³ That point came up early in the August 14 hearing. After the court described the co-defendant testimony that had been introduced at prior hearings, Petitioner began to offer the arguments regarding Ms. Horsley that are quoted above. (Plea Hr'g Tr., ECF No. 2-1, PageID.38.) The Court indicated that if Petitioner wanted to present his contrary arguments and evidence, the place to do that was at trial. (*Id*. ("And that's why we have trials, Mr. Eppes.").) That point was also driven home in the Advice of Rights form: "If your plea is accepted, you will not have a trial of any kind and you will be giving up the rights you would have at a trial, including the right: . . . to have the prosecutor prove beyond a reasonable doubt that you are guilty . . . . ' Petitioner indicated that he read and understood that point.

Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a subsequent assertion that the circumstances were different than he represented at the hearing. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* at 90. Furthermore, because defendant's later claim of a secret agreement was negated by the trial

---

³Petitioner's own experience with the criminal process would have made him aware of that point. This was Petitioner's fourth criminal prosecution. According to the Michigan Department of Corrections (MDOC) Offender Tracking Information System (OTIS), Petition had entered pleas in two cases prior to this one and proceeded to trial in another. *See* http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=192747. This Court takes judicial notice of the information provided by a search of the MDOC OTIS website with regard to Petitioner. *See, i.e. Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249 *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F.Supp.2d 818, 821–22 n. 3 (E.D.Mich. 2004).

record, no evidentiary hearing was required. *Id.* at 92. The court again addressed this issue in *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), and *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also section 2255 cases. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy. In *Warner*, the Sixth Circuit likewise rejected claims of attorney promises in the face of defendant's flat denial of promises at the plea, holding that the petitioner's statements "estopped" him from relying on undisclosed promises. 975 F.2d at 1210. *See also Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999) (concluding that "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy").

Petitioner's statements at the plea hearing similarly bind him now and belie his claim that he was unaware his plea foreclosed challenges to the sufficiency of the prosecution's case. The trial court so concluded when it rejected Petitioner's claim: "Rather, the record and file indicate that Eppes understood the plea offer, and signed his plea agreement and Advice of Rights form. . . . The record reflects that Eppes['] plea was knowing and voluntary." (Kent Cty. Cir. Ct. Op. & Ord., ECF No. 2-1, PageID.91.) The state court's determinations of fact in support of that

conclusion are reasonable on the record and its determination that Petitioner's plea was knowing and voluntary is consistent with, not contrary to, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief.

        B.        <u>If Petitioner's counsel rendered ineffective assistance, Petitioner suffered no prejudice</u>

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges of guilty pleas based on ineffective assistance of counsel.[4] *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies

---

[4] Petitioner's ineffective assistance claim in the state courts and in his habeas petition is centered on his guilty plea; however, there are statements in his petition and brief that indicate he believed his counsel rendered ineffective assistance by failing to properly investigate and prepare Petitioner's case. A knowing and voluntary guilty plea waives

14

the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

Petitioner claims Mr. Danian rendered ineffective assistance during the 20 minute break on August 14, 2014, as they discussed the plea offer, because Mr. Danian told Petitioner he would be able to "raise his issues" even if he entered the plea. (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 2-1, PageID.85.) There is no record regarding what Mr. Danian meant by that statement; however, even if counsel had told Petitioner that after pleading guilty Petitioner could challenge the sufficiency of the prosecution's evidence on an appeal as of right, thereby demonstrating performance far below an objective standard of reasonableness, Petitioner would not be entitled to habeas relief because Petitioner cannot show prejudice.

---

all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea. *See U.S. v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001). Petitioner's claims of ineffective assistance do not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate, but instead relate to earlier alleged constitutional deprivations. Such claims have been waived by his subsequent guilty plea. *See Stiger*, 20 F. App'x at 308-09; *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).

15

If counsel's hypothetical misstatement of the law had caused Petitioner any misperceptions regarding the impact of Petitioner's plea, the trial court corrected those misperceptions at the plea hearing. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999) ("[T]he state trial court's proper colloquy can be said to have cured any misunderstanding Ramos may have had about the consequences of his plea.") Petitioner's self-serving averment that he would have proceeded to trial if he had only known he would not be able to challenge the sufficiency of the prosecution's evidence after entering his plea is utterly unconvincing. (Pet'r's Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 2-1, PageID.88.) Where a defendant indicates on the record that he understands the specific consequences of his plea, he is "'bound by his statements[.]'" *Ramos*, 170 F.3d at 566 (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). To hold otherwise would "[render] the plea process meaningless . . . ." *Id.* Indeed, "the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before" the Court. *Id.* Accordingly, Petitioner has failed to show that he suffered any prejudice as a result of counsel's alleged ineffectiveness.

The trial court's resolved the issue the same way: "Even if the Court were to agree that Eppes received substandard legal advice, Eppes has not established that a different outcome would have likely resulted." (Kent Cty. Cir. Ct. Op. and Ord., ECF No. 2-1, PageID.91.) That determination is consistent with, not contrary to, *Strickland* and is reasonable on this record. Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated: August 21, 2017                /s/ Paul L. Maloney
                                      Paul L. Maloney
                                      United States District Judge